MILWAUKEE & ST. PAUL RAILROAD COMPANY VS. THE MILWAUKEE AND MINNESOTA RAILROAD COMPANY and others.

*Jurisdiction—State and Federal courts—Property in hands of receiver.*

A state court has no jurisdiction of an action to foreclose a mortgage, or to avoid or set aside an alleged foreclosure and sale by the mortgagee under a power, where the premises were, at the commencement of the action, in the hands of a receiver appointed by a *federal* court having jurisdiction to make such appointment; and this, whether the lien which such receiver was appointed to enforce was prior or subsequent to that sought to be enforced in the state court.

APPEAL from the Circuit Court for *Milwaukee* County.

Action to foreclose a railroad mortgage, and to have a receiver appointed, &c. The complaint alleges the making of bonds for two million dollars by the *La Crosse & Milwaukee R. R. Co.*, in 1858, with interest coupons attached, and the execution as security therefor of a mortgage or deed of trust running to *William Barnes*, and embracing the whole road of said company from Milwaukee to La Crosse, with all the real property connected with said road, and all its rolling stock, and also its franchises; the delivery of said mortgage to said *Barnes;* the subsequent delivery to him, in the same year, of a supplemental mortgage or deed of trust, covering all the franchises of the company of every kind, all lands granted or to be granted to it under a certain act of Congress and an act of the legislature of this state therein mentioned, and also all choses in action which the mortgagor company might own or

have an interest in on the day of its first making default in the payment of said bonds. Due record of said mortgages is then alleged, and subsequent delivery of said bonds to the amount of $1,300,000 in payment of said company's debts, and that a large number of them passed into circulation, and are now held by *bona fide* purchasers; that of these plaintiff is the lawful owner and holder of sixty-two (the numbers of which are specified), amounting in the aggregate, exclusive of interest, to $37,400; that said *La Crosse & Milwaukee R. R. Co.* made default in the payment of the coupons which became due January 1st, 1859, and all subsequently falling due, making the amount of interest due and unpaid on plaintiff's coupons $15,708; that plaintiff had notified *Barnes* that it was the holder and owner of said sixty-two bonds, and that default had been made thereon, and requested him to proceed and foreclose said mortgage or deed of trust for the use of the holders of said bonds and to pay over to the plaintiff its proportion of the proceeds, offering to indemnify him, &c.; but that said *Barnes* has neglected and refused, and still neglects and refuses, to take any steps to foreclose said mortgage. The complaint then avers that said *Barnes* gives out and pretends that said mortgage or trust deed has been foreclosed by him, and the mortgaged premises by him sold at the court house in the city of Milwaukee, on the 21st of May, 1859, in pursuance of the power granted therein, and that he became the purchaser for the benefit of the bondholders secured thereby, at the sum of $1,593,333.33, and that afterwards, on or about May 23d, 1859, the owners and holders of a portion of the bonds secured by said mortgage or trust deed proceeded to organize a railroad company, elected directors, and took the corporate name of the *Milwaukee & Minnesota Railroad Company*, and *Barnes* then conveyed to said pretended company all the mortgaged premises so purchased by him, and from thence hitherto said last named company have assumed to be and act as a railroad company, and to have succeeded to the property and franchises of the *La*

*Crosse & Milwaukee Railroad Company.* But the complaint alleges that said pretended foreclosure was irregular and of no effect; that said sale and purchase by *Barnes* was without authority, and that the amount of his said bid was never paid by or for him; that said pretended organization of the *Milwaukee & Minnesota Railroad Company* was unauthorized and without effect, and the title to said mortgaged premises did not pass to *Barnes*, nor to said *Milwaukee & Minnesota Company*, by virtue of said foreclosure, sale and conveyance, but still remains in the *La Crosse & Milwaukee Company;* that at the time said sale was made, only one million three hundred thousand dollars in amount of said two million dollars of bonds, purporting to be secured by said mortgage, had been issued or put in circulation by said *La Crosse & Milwaukee Company*, but the advertisement published by said *Barnes* as trustee, in pursuance of which the sale was made, stated the amount of bonds outstanding and secured thereby was two million dollars of principal, and that the interest due thereon and on which default was made January 1, 1859, was about $70,000, when in fact there was only the sum of $1,300,000 principal, and about $45,500 interest past due and unpaid. It is further alleged that said *Barnes* was not authorized by said trust deed or mortgage, or by the supplemental deed or mortgage, to bid in the premises for the benefit of the bondholders secured thereby, and that there was no law of this state in force when said mortgage or deed of trust was executed, or said bonds put in circulation by the *La Crosse & Milwaukee Company*, authorizing him to do so; that he was never authorized, except by a few of said bondholders, so to bid, and his pretended purchase was of no binding force upon the other bondholders; that nothing has ever been paid or received on plaintiff's said bonds in consequence of such pretended sale, and the holders and owners of said bonds now owned by the plaintiff never authorized or ratified said sale. It is also alleged that on the 31st of December, 1856, said *La Crosse & Milwaukee Railroad Company* executed a mortgage or

deed of trust to Greene C. Bronson, James T. Soutter and Shepherd Knapp, as trustees, on all that part of the mortgaged premises before described lying west of Portage City, to secure certain other described bonds; that said mortgage &c. was a lien on said premises prior and superior to that created by the *Barnes* mortgage; and that it was foreclosed January 13, 1862, in the district court of the United States for the district of Wisconsin, by suit commenced December 5, 1859, and the premises sold by the marshal, April 25, 1863, and the sale confirmed, whereby the plaintiff herein, and all other persons claiming under the *Barnes* mortgage, were barred of all lien upon and equity of redemption in said mortgaged premises west of Portage City. The complaint then alleges that the *La Crosse & Milwaukee Company* is utterly insolvent, and that on the 11th of June, 1860, Hans Crocker took possession of the railroad of said company, together with its rolling stock and equipment and all its other property, as receiver, to which office he was duly appointed by the district court of the United States for the district of Wisconsin, and that as such receiver he still holds possession of all of said road &c., except that portion so as aforesaid sold by the marshal under the decree of said district court. It is then alleged that the mortgaged property, subject to prior incumbrances, is wholly inadequate to the payment of the bonds secured by the *Barnes* mortgage; and that the plaintiff brings this action for the benefit of itself and all other bondholders, &c. &c. Prayer, that the amount due the plaintiff and the other holders of said bonds be ascertained; that said mortgage or trust deed to *Barnes* be foreclosed, and the premises sold, and out of the moneys arising from such sale said bondholders be paid &c.; that the purchaser at such sale be let into possession of the premises, and the defendants be barred, &c.; that said pretended foreclosure and sale made by *Barnes*, and the conveyance from him to the *Milwaukee & Minnesota Railroad Company* be vacated, and that it be adjudged that said last named company is not the owner of the equi-

ty of redemption in said premises, and has no title thereto: that a receiver be appointed to take possession of said mortgaged property and operate, manage and control the road, and receive the revenues thereof during the pendency of this action; and for general relief.

The *Milwaukee & Minnesota Railroad Company*, and two other defendants (subsequent incumbrancers), demurred to the jurisdiction, and also on the ground that no cause of action was stated, and that the plaintiff is a corporation having no right to buy or deal in said bonds. From an order sustaining the demurrer, the plaintiff appealed.

*John W. Cary*, for appellant:

The appointment of a receiver by another court does not oust the circuit court of jurisdiction of the parties or the subject matter. There is no case where it has been held that jurisdiction of the person could not be entertained because another tribunal had appointed a receiver of the defendant's property; but every case where the question has been discussed holds the contrary. As to property in the receiver's hands, the doctrine is, not that another court can take no jurisdiction of it, nor hear and decide questions respecting it, but that no steps can be taken that will affect the title or possession of the receiver. The complaint sets forth that the receiver was appointed on a mortgage prior to the plaintiff's claim, and only seeks to reach such interests as remain after satisfying the demands of the receiver. Hence by no possibility could the judgments sought in these cases, or the execution thereof, affect in any way the possession or rights of the receiver. The doctrine of *pro interesse suo*, as respects receivers, is wholly applicable to claims that are a lien prior and superior to that upon which the receiver is appointed. I find no case where a subsequent claimant has intervened in this manner. The following cases are referred to as illustrating this proceeding: *Att'y Gen'l v. Mayor*, 1 P. Wms., 3089; *Walker v. Bell*, 2 Madd., 21 (352); *Brooks v. Greathed*, 1 Jacob & W., 278; *Dixon v. Smith*, 1 Swanst.,

457; *Dickinson v. Smith*, 4 Madd., 177 (97); *Pelham v. Dutchess of N.*, 3 Swanst., 290, n; *Wharam v. Broughton*, 1 Ves. Sr., 180; 3 Hare, 461; *Franklyn v. Colhoun*, 3 Swanst., 276. The court below should have taken jurisdiction of the case, and settled the rights of the parties, and then, if it had doubts of its right to enforce its judgment while the receiver was in possession, should have directed the party to apply to the district court for leave to execute such judgment. This is the usual course, and the one indicated in *Wiswall v. Sampson*, 14 How. (U. S.), 52. These parties are all citizens of this state, and, under the rule established in the circuit court, cannot prosecute so long as a receiver is maintained in the federal court; and this would amount to a total denial of justice.

*Mat. H. Carpenter* and *H. S. Orton*, for respondent:

1. The possession of the receiver is the possession of the court whose officer he is, and any attempt to disturb it is a contempt of court. *Wiswall v. Sampson*, 14 How., 52; *Brooks v. Greathed*, 1 J. & W., 176; 3 Dan. Ch. Pr., 1984. 2. The state court cannot proceed to the sale of the property which is in the custody of the federal court. In *Wiswall v. Sampson* it was directly decided that such a sale could not be made even upon a *judgment at law* prior in date to the lien in favor of which the receiver was appointed in equity. For stronger reasons it could not be made by another court of equity. The sale at law would not necessarily actually interfere with the possession of the receiver, while a sale by a court of equity proceeds upon the theory that such court takes possession of the property for the purpose of sale. The court is the vendor, has a vendor's lien for the purchase money, and is deemed to be, and must be, in possession before it can pass title and give possession (*Williams' Case*, 3 Bland, 215; *Andrews v. Scotton*, 2 id., 663–4); and possession will always be delivered by the court to its purchasers, by writ of assistance. The decree of sale would therefore bring this and the federal court in conflict. For that reason any person having an interest in or lien upon

the property must go to the federal court, move to be examined *pro interesse suo*, or ask leave to commence suit in relation to the property. *Wiswall v. Sampson*; *Freeman v. Howe*, 24 How., 451. Counsel further argued that where the court cannot grant to the plaintiff the full and appropriate relief to which he is entitled upon the facts as between him and the defendant, it will not entertain jurisdiction at all; and also that when the receiver of the federal court has taken possession of a specific piece of property, it is as completely withdrawn from the state of Wisconsin, for all purposes of the jurisdiction of its courts to take possession of and sell it, as though it were situated in another state; citing to the latter point *Chittenden v. Brewster*, 2 Wallace, 191.

Cole, J. We are of the opinion that the order appealed from in this case must be affirmed for the objection taken as the first ground of demurrer. That objection is, that it appears upon the face of the complaint that the circuit court of Milwaukee county has no jurisdiction of the subject of the action, which is the railroad and other property therein mentioned, for the reason that the same is in the possession of the United States court by its receiver. This point we think well taken. The complaint certainly shows in the clearest manner that Hans Crocker, as receiver, on the 11th day of June, 1860, took possession of the railroad of the La Crosse & Milwaukee company, together with its rolling stock and all other property, under the foreclosure proceedings in the United States district court, and that he still holds possession. It likewise appears that the receiver was appointed under a mortgage prior in date and superior in equity to the *Barnes* mortgage, which the plaintiff asks to have foreclosed for its benefit and the benefit of other bondholders under that mortgage. Now is it not perfectly obvious that there can be no foreclosure and sale under the *Barnes* mortgage without directly interfering with the rights or possession of the receiver? The relief prayed for in the complaint

172    SUPREME COURT OF WISCONSIN,

Mil. & St. P. R. R. Co. vs. The Mil. & Minn. R. R. Co. et al.

is, that the amount due the plaintiff on its bonds, as well as all other bondholders under the mortgage to *Barnes*, be ascertained and determined ; that the said mortgage be foreclosed, and the premises therein described be sold under the direction of the state court, and that the purchaser at the sale be let into the possession of the mortgaged premises.    How can any such relief be granted without disturbing the possession of the receiver ?    Should the state court, for the purpose of enforcing a later incumbrance, proceed to sell property already in the care and possession of another court, by its receiver, to satisfy a superior mortgage ?    We were referred to a class of cases on the argument, which hold that any attempt by a person having an outstanding right or title, to disturb the possession of a receiver, would be considered a contempt of the court appointing such receiver ; and that even when a party is asserting a prior legal right over the property, he should ask and obtain leave of the tribunal appointing the receiver, before bringing his action ; otherwise he will be liable to be adjudged in contempt, and punished accordingly.    The reason given for this rule of practice is, that unless the court having possession of the property is permitted to retain it undisturbed, and administer upon it, nothing could be more easy than to prevent the execution of the decree by persons having or pretending title to such estate. See the authorities cited on the briefs of the counsel in this case, and also *Angell v. Smith*, 9 Vesey, 335 ; *Chatauque County Bank v. Risley*, 19 N. Y., 370.    If this rule obtains in respect to one asserting a paramount right to the property in the possession of the receiver, the reason of the rule certainly applies with stronger force to a party seeking to enforce a confessedly inferior lien.

The counsel for the plaintiff admits that the principle is perfectly well settled, that when a receiver has been appointed by one court to take possession of property, no steps can be taken in another court which will affect the title or possession of the receiver.    And this concession would seem to be fatal to the

action. For, as already observed, if there should be a foreclosure and sale under the *Barnes* mortgage, surely the purchaser at such sale could not be let into the possession of the mortgaged property without taking the possession from the receiver. And that this should not be done, particularly where the receiver is in possession under a prior incumbrance, results from the most obvious legal principles.

It is attempted, however, to avoid the application of the rule of practice just referred to, by insisting that it is one object of the suit at bar to inquire into the regularity of the foreclosure already made by the trustee, *Barnes*, and to set aside and vacate that foreclosure, and the conveyance made by the trustee to the defendant company. And it is said that the court below should take jurisdiction for the purpose of determining and settling these questions, and then, if there is any doubt about its right to enforce its judgment while the receiver is in possession, it should direct the party to apply to the court in which the receiver is appointed, for leave to execute its judgment. But such litigation in the state courts, if not anomalous, would manifestly be fruitless and inconsequential, while the railroad is in the possession of the receiver. For suppose the state court should determine that the sale made by *Barnes* was for any reason invalid and of no effect, yet it could not proceed and foreclose the *Barnes* mortgage by selling the mortgaged premises. Or if it should sell, it could not place its purchaser in possession without disturbing the possession of the receiver already appointed; and therefore the litigation would be of no avail. It seems to us, the more appropriate tribunal for settling these rights is the United States court, which has already taken the possession and control of the railroad property by its receiver, and which, in distributing the fund, can fully protect the interests of all parties. If there is any money which can properly be applied in payment of the bonds secured by the *Barnes* mortgage, there is no difficulty in the United States court applying it upon those claims. It is fully competent to ascertain

and settle the rights of the parties, and distribute the funds among those entitled to them.

*By the Court.*—The order of the circuit court sustaining the demurrer, is affirmed.

DOWNER, J., took no part in the decision of this case.